## In the matter of HALLET, trustee, &c.

Where the testator devised certain specified portions of his real estate to the children of his step-daughter and to the children of his son and daughters respectively, designating all the devisees as his grandchildren, and gave to the parents of the devisees the income of those portions of his estate for life, and directed the residue of his real estate to be converted into personalty, and the proceeds thereof, together with his other personal estate, to be divided in six shares, one share of which he bequeathed to his step-daughter, and the other five shares to his son and daughters, giving to the son and three of the daughters life interests in their respective shares, with remainder to their children if they should have any, and further directed that in case any of his children, or his step-daughter, should die without issue, the share of his estate which would have gone to such issue should be equally divided among the survivors of his children or grandchildren ; *Held,* that the step-daughter was not a surviving *child* of the testator within the intent and meaning of this last clause of the will ; so as to

1840.

In the matter of Hallet.

entitle her to a portion of the share of one of the testator's daughters who died without having had any issue.

As a general rule, the testator is presumed to have used words in their ordinary or primary sense, in disposing of his property by will; especially where he has in other parts of his will used different words to designate a person, who is claimed to be included in a bequest or limitation over to a class of persons, by giving a secondary sense to the words used by the testator to designate the persons composing such class.

May 19.

THIS was an appeal from a decision of the vice chancellor of the first circuit, upon the construction of the will of C. Sambler, deceased. The decedent by his original will, made in 1809, devised to his wife for life his farm in the city of New-York, together with the stock, farming tools and household furniture, and after her death he gave to his *grand children* and to their heirs forever, the said farm, as follows : " to the children of my step-daughter Margaret, the wife of J. N. Greensback, lot No. 1 of my said farm ; to the children of my daughter Susanna, the wife of W. Coulthard, lot No. 3 of my said farm ; to the children of my daughter Elizabeth, the wife of Matthew Gallalee, lot No. 2 of my said farm ; to the children of my son John ten acres of lot No. 4 of my said farm ; to the children of my daughter Barbara, if she should have any, five acres, three roods and thirty-two perches of the said lot No. 4, (locating both pieces ;) and to the children of my daughter Mary, in case she should have any, lot No. 5 of my said farm." He then directed that the remainder of the farm should be sold, and also all the residue of his real estate, at such time and on such terms as his executors should think best for the interest of his legatees, and that the proceeds thereof should be considered as personal estate, and should be divided among his legatees, as the rest of his personal estate was in his will afterwards directed to be divided. He then gave to his step-daughter Margaret, and his daughter Susannah, and to their husbands, the use of the lots specifically devised to their children respectively, during the lives of the daughter and step-daughter and of their husbands respectively ; and then to be divided among their children. And he vested a similar estate in the

executors, as the trustees, for the benefit of his other four children in the lands specifically devised to their children respectively.

And after making a few small legacies, he directed his personal estate to be divided into six equal shares ; which he bequeathed as follows : " To my step-daughter Margaret, one share ; to my daughter Susannah, one share ; to the children of my daughter Elizabeth, one share ; to the children of my daughter Mary one share ; to the children of my daughter Barbara, one share ; and to the children of my son John, one share"—giving to his son and the three daughters last mentioned life interests in the income of such shares respectively during their lives, and the principal then to be divided among their children. The will then contained the following clause, under which the question as to the distribution of the proceeds of the real estate directed to be sold, arose : " It is further my will, that in case of the death of any of my said children, or my said step-daughter, without lawful issue, that then the share or portion of my estate which by this my will would have gone to such issue, be divided equally among the *survivors of my children or grandchildren,* in the same proportion as is herein before mentioned."

The testator's daughter Barbara died after her father, without ever having had any issue. And the testator's residuary real estate having been sold by the petitioner, W. P. Hallet, who had been appcinted by this court a trustee to execute the power of sale contained in the will, in the place of the executors who were dead, the question arose whether the representatives of the step-daughter, who was also dead, and had left children, were entitled to a portion of the proceeds which would have belonged to the issue of Barbara if she had left any, or whether it all belonged to the children and grandchildren who were of the blood of the testator. The vice chancellor decided against the representatives of the step-daughter ; as he had previously decided relative to the distribution of the personal estate. (*Barnes and others* v. *Greenzeback and others,* 1 *Edw. Ch.*

*Rep.* 41.) From this decision the representatives of the step-daughter appealed.

*S. P. Staples* & *J. W. Gerard,* for the appellants.

*C. O'Conner* & *O. Bushnell,* for the respondents.

THE CHANCELLOR. The real estate specifically devised is, as to all the shares, limited to the grandchildren of the testator ; among whom the children of the step-daughter are designated by him by the term grandchildren. If the question arose, therefore, as to that portion of the real estate specifically devised to the children of Barbara, in case she should have any, there certainly would be much reason to suppose that by the term *grandchildren* in the last clause of the will, the testator had included the children of his step-daughter, who were called his grandchildren in a previous clause. In the case of *Hussey* v. *Berkley,* (2 *Eden's R.* 194,) Lord Northington, upon the question whether the testatrix intended to include great grandchildren under the term grandchildren, considered the fact that she had in another part of the will called a great grandchild her granddaughter, as conclusive evidence of her intention to include such great grand-daughter in the residuary clause of the will, under the general description of her grandchildren. (*See also Wigram on Wills,* 29.) As a general rule, however, the testator must be presumed to have used words in their ordinary or primary sense ; especially where he has in other parts of his will used different words to designate a person, who is sought to be included in a bequest or limitation over to a class, by giving a secondary sense to the language which the testator has used to designate that class. (7 *Paige's Rep.* 339.) Here the construction is to be put upon the last clause of the will as to the limitation over of the personal property only ; as the proceeds of the real estate directed to be sold are to be considered as personal estate, and to be distributed and disposed of in the same manner. The question therefore is not upon the word

1840.

In the matter
of Hallet.

grandchildren ; as the children of Susannah and of the step-daughter were not entitled to any share of the personal estate, the two-sixths thereof being absolutely vested in their parents at the death of the testator. It is only that share of the testator's estate which by the will is given to the grandchildren, or to the issue of Susannah and of the step-daughter, to which this clause of survivorship among his grandchildren applies : that is, the two lots devised to the children of Susannah and of the step-daughter after the death of their parents, and the four lots and the four-sixths of the personal estate, and the residuary real estate converted into personalty and given to the issue of the four other children. The question therefore is, whether the testator's *surviving children*, in this last clause, includes his step-daughter ; so as to entitle her to a share of the personal estate and of the proceeds of the residuary real estate bequeathed to the children of Barbara. In reference to this question, I think the vice chancellor was right in supposing that the testator did not intend to include the step-daughter in the term children ; although he probably did intend to include her issue in the term grandchildren. By examining the will, it will be seen that in every other clause where any reference is made to her, and even in the commencement of this last clause, he shows that he recognized the difference between her and his real children ; as he uniformly calls her by the appropriate name of step-daughter, while he calls the others his daughters, or his children. There are perhaps some grounds for believing, from the general frame of the will, that she was left out of this clause of survivorship by inadvertence, or by mistake of the scrivener who drew the instrument ; and that the testator might have intended to put her and her children upon the same footing with his daughter Susannah and her children, in every respect, in the disposition of his estate. But if such was his intention, it is not sufficiently manifested, by any thing contained within the four corners of this will, to authorize this court to give effect to such an intention ; upon the settled rule of construction to which I have before re-

ferred. Here the limitation over " to his surviving chil-
dren and grandchildren, in the proportions in the will pre-
viously mentioned," is perfectly sensible, and consistent
with the situation of the testator's family ; whether the words
" survivors of my children" were used by him according to
their natural import, or in a secondary sense. And as there
is nothing in the context showing these words were intend-
ed to be used in a secondary sense, so as to include the
step-daughter, their primary sense must prevail in giving a
construction to that clause of the will.

The decision of the vice chancellor must therefore be
affirmed, with costs.