WRIGHT v. WRIGHT et al.

(Supreme Court, Special Term, Steuben County. October 21, 1909.)

1. WILLS (§ 452*)—CONSTRUCTION—PROVISION FOR DESCENDANTS.
   A will should, if possible, be so construed as to provide for descendants or posterity.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 968; Dec. Dig. § 452.*]

2. WILLS (§ 455*)—CONSTRUCTION—INTENTION OF TESTATOR.
   The court should not read into a will language which testator did not use, nor so construe it that his intention as expressed in the will, will be thwarted, nor can the court devise a new scheme for a testator for the purpose of spelling out a theory by which it can be said that testator intended to do something which his language shows he did not intend.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 972; Dec. Dig. § 455.*]

3. WILLS (§ 540*)—CONSTRUCTION—ESTATES CONVEYED.
   A will gave all the remainder of testator's property, after the death of his wife, to his children then living, provided that, if any of the children should die before the death of the wife and should leave a child or children surviving, the share which would have gone to such deceased child should be paid to his child or children. Held, that the intent was that testator's children should have no interest in the property until after the wife's death, when the children then living should have the property, the share which would have gone to such child or testator after the death of the wife to go to the child's child or children in case of his death prior to the death of the life tenant, and, where a son and his child both died before the life tenant and after testator's death, the share which would have gone to one of them was absolutely divested.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1164; Dec. Dig § 540.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Emma Wright against Achsah L. Wright and others. On demurrer to the complaint. Demurrer sustained, and complaint dismissed.

Sebring & Cheney, for plaintiff.
Smith & Crane, for defendants.

CLARK, J.   This action is brought to partition the real property described in the complaint which was owned by Nelson Wright, who died December 30, 1890.   Mr. Wright left a last will and testament which was admitted to probate in the Surrogate's Court of Steuben county.

By the second item of his will Mr. Wright gave to his wife, Eliza Jane Wright, all of his property "to have and to hold the same with the use, interest and full enjoyment thereof for and during her natural life."   The third clause of his will is as follows:

"I give, devise and bequeath all the remainder of my real and personal property after the death of my said wife unto my children then living share and share alike, provided if any of my children shall die before the death of my said wife, and shall leave a child or children surviving them, and in that case the share which would have gone to said deceased child shall be paid to such child or children share and share alike."

The widow, Eliza Jane Wright, died October 15, 1906.   At the time of testator's death he was survived by his widow and eight children, among the latter being a son, Albert E. Wright, who died after the death of his father, the testator, and before the death of his mother, Eliza Jane Wright, who had the life use of all of her husband's property.   This son, Albert E. Wright, on the 1st day of January, 1897, by warranty deed undertook to convey an undivided one-eighth interest in the premises in question to Thomas Harrison, and since the death of Albert E. Wright, by various conveyances, that interest, if any, has been acquired by the plaintiff.   Albert E. Wright died intestate after his father's will had been probated, leaving this plaintiff his widow, and an infant child named Maud Wright, who died intestate, without descendants, before the commencement of this action, leaving the plaintiff, her mother, as her only heir at law.   The said Maud Wright died before the death of Eliza Jane Wright, the widow of the testator.

The plaintiff claims to have acquired an interest in the premises described in the complaint under the deed of Albert E. Wright, and also claims that, if the latter had no interest in the premises which he had power to convey to Thomas Harrison, the interest which he acquired by his father's will descended to his daughter, Maud Wright, and upon her death said interest went to her only heir, her mother, who is the plaintiff in this action, and that consequently, on either theory, the plaintiff is entitled to maintain this action.   The defendant's contention, on the other hand, is that the plaintiff has no interest in the premises; that the deaths of Albert E. Wright and Maud Wright prior to the death of the life tenant, Eliza Jane Wright, divested whatever interest they had in the property in question, and left the surviving children of Nelson Wright, at the death of his widow, the sole owners of the prop-

erty described in the complaint, and a decision of the issues of law raised by the demurrer involves the construction of the third clause of the will of Nelson Wright, deceased, as above quoted.

It is, of course, well understood that the law favors the vesting of estates, and wills should be so construed as to provide for descendants or posterity if that is possible, but it is equally true that the court should not read into a man's will language which he did not use, or so construe it that his intention, as expressed in the will, will be thwarted, and the court cannot devise a new scheme for a testator or make a new will. Leggett v. Stevens, 185 N. Y. 77, 77 N. E. 874; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487. In construing a will the court should give the language used its natural meaning, and not any forced and unnatural meaning for the purpose of spelling out a theory by which it can be said that the testator intended to do something which his language shows he did not intend.

Adopting the theory that the words used in the third clause of testator's will should be given their natural meaning and not a strained or forced meaning, it does not seem to be difficult to dispose of the questions raised by this demurrer. The testator intended first to provide for his wife by giving her the life use of all of his property. Then he said by the third clause of his will that he gave all of the remainder of his property after the death of his wife to his children then living share and share alike, and that, if any of the children should die before his wife's death leaving a child or children, the share which would have gone to said deceased child should be paid to such child or children share and share alike. What did testator mean when he said "after the death of my wife"? What was his purpose in saying immediately following these words that the rest of the property should go to his children then living? The conclusion is irresistible that he intended that his children should have no interest whatever in his property until after his wife's death, and he plainly said so, and, upon the happening of that event, the children then living would have the property. That meant the children who were living at the time his wife died, and to say after using the expression the "children then living" meant children theretofore deceased would be giving the language a meaning that is most unnatural. And, to further emphasize the fact that he intended that only the children or their descendants who survived his wife should share in his property, he said that, in case any of his children died before the death of his wife leaving children, the share which would have gone to the deceased child should be paid to such child or children. Is there any doubt of the testator's intention when he used the expression "the share which would have gone," etc.? It is clear he intended the share which would have gone to such child after the death of the mother. If he had intended that the interest should vest upon his death, he would have said so by using the expression the share "hereby given" or "hereby devised" instead of using the expression "the share which would have gone."

The learned counsel for the plaintiff urges that to adopt the construction claimed by the defendants here testator's heirs would be disinherited. That is a fallacy, for this plaintiff is not an heir of Nelson

Wright, deceased. She is the wife of a deceased son, the latter's only child having died without descendants and before the death of the life tenant, and the plaintiff is by no means a natural object of the testator's bounty, as her husband or his deceased child Maud would have been had they survived. The plain intention of the testator must be adopted, and no rule of construction can deprive the man who accumulated property in the absence of fraud, undue influence or incompetence of the right to do with it as he deems best.

I think, there being a substitution clause in the third item of this will, that plaintiff's husband did not take an estate in the remainder which vested absolutely on the death of the testator, but that such absolute vesting would not take place until the death of the life tenant, testator's widow, and that consequently plaintiff's husband could not convey to Thomas Harrison the remainder of an undivided one-eighth in the property in question in fee, but that whatever interest he took was subject to be divested and was divested on his death, before the life tenant, and that whatever interest his daughter Maud would have taken under the substitution clause was absolutely divested upon her death before the death of the life tenant, she having left no descendants, and consequently the plaintiff does not take any interest in the property either by way of the conveyance to Harrison or as an heir of her deceased child Maud, but that, her husband and also her only child having died prior to the death of the life tenant, any interests which they may have acquired under the will became divested when they died. Hebberd v. Lese, 107 App. Div. 425, 95 N. Y. Supp. 333; Flanagan v. Staples, 28 App. Div. 319, 51 N. Y. Supp. 10; Weymann v. Weymann, 82 App. Div. 342, 81 N. Y. Supp. 959; Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334; Lake v. Ascher, 132 App. Div. 684, 117 N. Y. Supp. 465. The period of an absolute vesting of the contingent interest devised to Albert Wright under his father's will was after the death of his widow the life tenant, and Albert having died before the death of the life tenant, leaving a minor child, his interest became divested upon his death, and his surviving minor child took whatever interest he had in the property by substitution in pursuance of the substitution clause in the third article of the testator's will. Then, when the minor child died leaving no descendants, her death having occurred before the death of the life tenant, any interest which she took under the substitution clause of the will after the death of her father became divested upon her death, her mother, this plaintiff, cannot take that share of the property by substitution under the will, and it went to the children of the testator who survived the life tenant; they taking the entire estate at their mother's death. Patchen v. Patchen, 121 N. Y. 432, 24 N. E. 695; Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334; Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110. The cases are not at all uniform, and several authorities cited by counsel for plaintiff would seem to support his contention, but we must construe the language adopted in this will, which differs in many respects from the language used in wills referred to in several such authorities, and notably in the case of Connelly v. O'Brien, 166 N. Y. 407, 60 N. E. 20, relied upon by the plaintiff, the will in that case containing no substitution clause whatever.

Reading the will in question as a whole, and giving to the language there used its natural ordinary meaning, leads to the conclusion that the testator here intended, first, to provide for his wife by giving her the life use of all of his property; that he intended to suspend the vesting of the estate in his children until after the death of his widow; that he intended the substitution clause in the third article of his will to protect the children of any of his own children who might die before the life tenant, and that he did not intend any part of his estate to go to strangers, or to this plaintiff, who was not a natural object of his bounty, but that he intended upon the death of his wife that his children, or upon the death of any of them, their children, should have his property, and, the Albert Wright branch of the family, having become extinct by death before the death of the life tenant, testator's children who survived her took all of his property, and the plaintiff has no interest therein.

It follows that the demurrer must be sustained, and judgment is directed in favor of the defendants on the demurrer, dismissing the complaint, with costs.