[877 NE2d 960, 847 NYS2d 156]

In the Matter of the Estate of BURTON WALLENS, Deceased. MAGGIE WALLENS, Appellant; CHARLES WALLENS, Respondent.

Argued September 6, 2007; decided October 18, 2007

## POINTS OF COUNSEL

*Burd & McCarthy,* Buffalo (*Timothy A. McCarthy* and *Kenneth F. Joyce* of counsel), for appellant. I. The trustees breached their duty of care when they expended trust funds for the support of the beneficiary despite the clear financial ability and legal obligations of the beneficiary's father to support her out of his own separate assets. (*People v Grasso,* 13 Misc 3d 1227[A], 2006 NY Slip Op 52019[U]; *Matter of Hahn,* 62 NY2d 821; *Matter of Schlussel,* 203 Misc 749, 284 App Div 68; *Matter of Martin,* 269 NY 305; *Matter of Flyer,* 23 NY2d 579; *Suesens v Daiker,* 117 App Div 668.) II. Even if the trust funds could be expended to support the beneficiary despite the father's ability and obligation to support the beneficiary out of his own assets, the trustees breached their duty of loyalty and the father as trustee violated EPTL 10-10.1 by participating in the decision to use the trust funds for his daughter's support. (*Matter of De Planche,* 65 Misc 2d 501; *Meinhard v Salmon,* 249 NY 458; *Parker v Rogerson,* 33 AD2d 284; *City Bank Farmers Trust Co. v Cannon,* 291 NY 125; *Matter of People,* 303 NY 423; *Matter of Rothko,* 71 Misc 2d 320; *Rogers v Rogers,* 111 NY 228; *Matter of Lawler,* 215 App Div 506; *Matter of Seidman,* 58 AD2d 72; *Matter of Eberhart,* 171 Misc 2d 939.) III. Even if the trustee/father and his cotrustee were not prohibited from using trust funds to support the beneficiary under the principle set forth in points I and II, the actions of the cotrustees were invalid because they

violated the trustees' duty of good faith. (*O'Hayer v de St. Aubin,* 30 AD2d 419; *Meinhard v Salmon,* 249 NY 458; *Dutton v Willner,* 52 NY 312; *Munson v Syracuse, Geneva & Corning R.R. Co.,* 103 NY 58; *Matter of Balfe,* 245 App Div 22; *Matter of Hammer,* 16 AD2d 111, 12 NY2d 893; *Industrial & Gen. Trust, Ltd. v Tod,* 180 NY 215; *Matter of Rothko,* 84 Misc 2d 830.) IV. The Fourth Department's reliance upon the holdings of the foreign authorities cited was misplaced. (*Cleveland Clinic Found. v Humphrys,* 97 F2d 849; *Matter of Friedlander,* 189 App Div 90; *Brill v Wright,* 112 NY 129; *Matter of Revson,* 86 AD2d 872; *Matter of Kummer,* 93 AD2d 135.) V. The rule of coordinate jurisdiction does not apply in this case. (*Matter of Wright v County of Monroe,* 45 AD2d 932; *Belski v New York Cent. R. R.,* 38 AD2d 882; *George W. Collins, Inc. v Olsker-McLain Indus.,* 22 AD2d 485; *Martin v City of Cohoes,* 37 NY2d 162; *Matter of McGrath v Gold,* 36 NY2d 406; *Parker v Rogerson,* 33 AD2d 284; *O'Brien v Lehigh Val. R.R. Co.,* 177 Misc 25; *Board of Mgrs. of Parkchester N. Condominium v Quiles,* 234 AD2d 130; *Sullivan v Hudson Nav. Co.,* 182 App Div 152; *Kamp v Kamp,* 59 NY 212.) VI. Judge Sconiers' August 2000 order is void for lack of subject matter jurisdiction and personal jurisdiction. (*Matter of Eberhart,* 171 Misc 2d 939; *Matter of Rothko,* 84 Misc 2d 830; *Roe v Roe,* 49 Misc 2d 1070; *Albert C. v Joan C.,* 110 AD2d 803; *Crowell v Pryor,* 248 App Div 86; *Frank v Krauss,* 69 AD2d 1017; *Sipos v Kelly,* 66 AD2d 1022; *Schilling v Malark,* 13 AD3d 1153; *Matter of Delgado v Sunderland,* 290 AD2d 440.)

*Hiscock & Barclay, LLP,* Buffalo (*Bruce S. Zeftel* of counsel), for respondent. I. Payments by the father from the testamentary trust excuse and offset his obligation in the divorce decree. (*Cleveland Clinic Found. v Humphrys,* 97 F2d 849; *Matter of Friedlander,* 189 App Div 90; *Matter of Stackpole v Scott,* 9 Misc 2d 922; *Matter of Alice C. v Bernard G.C.,* 193 AD2d 97; *People v Roche,* 45 NY2d 78; *Rumsey v New York & New England R.R. Co.,* 133 NY 79; *Lewis v Upton,* 90 App Div 453.) II. The testator's intent was to provide trust assets for appellant's educational, general welfare and medical expenses. (*Winter v American Parkinsons Disease Assn.,* 85 NY2d 715; *Matter of Walker,* 64 NY2d 354; *Matter of Cord,* 58 NY2d 539; *Matter of Wilhelm,* 60 AD2d 32, 46 NY2d 947; *Matter of Pepper,* 307 NY 242; *Matter of Jones,* 38 NY2d 189; *Matter of Buechner,* 226 NY 440; *Matter of Pelton,* 190 Misc 624; *Maletta v Boczkowski,* 93 AD2d 828; *Matter of Martin,* 269 NY 305.) III. Appellant has not shown any breach of trust by respondent. (*Matter of Schnare,* 191 AD2d 859; *Matter of De Planche,* 65 Misc 2d 501; *Parker v*

*Rogerson,* 33 AD2d 284; *Matter of Rothko,* 71 Misc 2d 320; *Matter of Eberhart,* 171 Misc 2d 939; *Matter of Howe,* 4 Misc 2d 960; *Matter of Warfield,* 90 Misc 2d 899; *Matter of Seidman,* 58 AD2d 72; *Rogers v Rogers,* 111 NY 228; *Matter of Lawler,* 215 App Div 506.) IV. Justice Howe properly refused to overturn the order of Justice Sconiers. (*Kagen v Kagen,* 21 NY2d 532; *Belski v New York Cent. R. R.,* 38 AD2d 882; *Parker v Rogerson,* 33 AD2d 284, 26 NY2d 964; *Riggle v Buffalo Gen. Hosp.,* 52 AD2d 751; *Messinger v Messinger,* 16 AD3d 562; *Buffalo Downtown Garage v Winfield Assoc.,* 42 AD2d 820; *Spahn v Griffith,* 101 AD2d 1011; *Matter of Wright v County of Monroe,* 45 AD2d 932; *Matter of Haas,* 33 AD2d 1; *Matter of McCoy,* 100 Misc 2d 301.) V. All of the distributions were made on approval of the cotrustee or pursuant to court order. VI. Respondent acted on advice of counsel. (*Matter of Joost,* 50 Misc 78, 126 App Div 932; *Bown v Ramsdell,* 139 Misc 360.)

### OPINION OF THE COURT

Per Curiam.

In this proceeding seeking judicial settlement of accounts of a cotrustee, we conclude that an issue of fact exists concerning whether the cotrustee breached his fiduciary duty to the trust beneficiary. Accordingly, we direct Surrogate's Court to conduct an evidentiary hearing on this matter.

In April 1992, testator Burton Wallens executed his last will and testament that, among other things, provided for the establishment of a $200,000 testamentary trust for the benefit of his granddaughter, petitioner Maggie Wallens (Maggie), then age 10. The will designated Maggie's father, respondent Charles Wallens (father), and the testator's cousin, attorney Richard D. Yellen, as cotrustees. In relevant part, the trust stated that

> "the Trustees may distribute to [Maggie] or apply for her sole benefit so much of the income at any time and from time to time such amount of the principal thereof per year of her Trust Estate as the Trustee shall deem advisable for her proper support, education, maintenance and general welfare or may, in the Trustee's discretion, accumulate so much of the income not so distributed or applied. Any income so accumulated may be invested or reinvested or may thereafter be distributed to aid [Maggie] or applied for her benefit."

The trust further provided that it would terminate when Mag-

gie turned 30 years old with any remaining principal and accumulated income being distributed to her.

In March 1995, after the execution of the testator's will, but prior to his death, Maggie's mother and father divorced. At that time, Maggie was 13½ years old and attending a private school. A year earlier, the parents had entered into a separation agreement in which father agreed to pay mother child support and certain education and health care costs for Maggie, including the cost of the private school education. The 1995 judgment of divorce, which incorporated, but did not merge, the provisions of the separation agreement, required father to pay, among other things, (1) "all educational expenses for [Maggie] at Elmwood Franklin School, Nichols and/or any other private day school the child shall attend, and at college and/or university" and (2) "any and all uninsured medical and dental expenses for the child."

In March 1997, the testator died. The will was admitted to probate and father was appointed cotrustee of the testamentary trust, together with Richard Yellen (who later resigned in 2002). At this time, father, as cotrustee, began distributing payments out of the trust for Maggie's private school education expenses. These payments were authorized by cotrustee Yellen. After Maggie began living with her father, he petitioned for a reduction/elimination of his child support obligations. In August 2000, Supreme Court issued an order relieving father of his child support obligations and directing that "the trust established by the [testator] for the benefit of the child shall be used to pay for normal and customary college costs and expenses."

In April 2003, pursuant to a petition for an accounting filed by Maggie, Surrogate's Court directed father to judicially settle his account as cotrustee. Father filed his account and Maggie objected, as pertinent to this appeal, to father's payment of her secondary school education and certain health care expenses from the trust. In her objections, Maggie alleged that the 1995 judgment of divorce required father to personally pay for certain educational and medical expenses, rather than use trust funds that would be distributed to her on her 30th birthday.

In March 2005, Surrogate's Court directed an evidentiary hearing, but a review of the record reveals that no such hearing was held. The court nevertheless sustained Maggie's objections to the use of trust funds for her private secondary school education, health care expenses and reimbursements for her personal allowance and ordered repayment to the trust. It rejected,

however, her claim that the expenditures related to her college education were improper, finding that such expenditures were authorized under the August 2000 Supreme Court order.

On appeal, the Appellate Division modified the order, dismissed the objections in their entirety, and remitted the matter to Surrogate's Court for further proceedings consistent with its decision. The Appellate Division concluded that "[father] did not engage in self-dealing, in breach of his fiduciary obligations to [Maggie] by his use of trust funds in precisely the manner authorized by the testator in the will provision establishing the trust" (*Matter of Wallens*, 30 AD3d 962, 965 [4th Dept 2006]). Upon remittal, Surrogate's Court approved the account. For the reasons that follow, we conclude that a remittal is, once again, necessary for Surrogate's Court to conduct a hearing as to whether father carried out his fiduciary duty as a cotrustee to act, in good faith, in his daughter's interests.

To determine whether a trustee's distribution of trust assets was proper, the settlor's intent controls (*see Matter of Chase Manhattan Bank*, 6 NY3d 456, 460 [2006]). "[T]he trust instrument is to be construed as written and the settlor's intention determined solely from the unambiguous language of the instrument itself" (*id.*, quoting *Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 267 [1990]).

It is also well settled that "a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect" (*Birnbaum v Birnbaum*, 73 NY2d 461, 466 [1989], citing *Meinhard v Salmon*, 249 NY 458, 463-464 [1928] [other citation omitted]). As Chief Judge Cardozo famously stated, "[a] trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" (*Meinhard*, 249 NY at 464). "This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (*Birnbaum*, 73 NY2d at 466 [citation omitted]). We have recognized that a "trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary" (*Matter of Heller*, 6 NY3d 649, 655 [2006], quoting Restatement [Second] of Trusts § 170 [1]; *see also Mercury Bay Boating Club*, 76 NY2d at 270 ["(T)he trustee must administer the trust for the benefit of the beneficiaries and cannot compete with the beneficiaries for the benefits of the trust corpus"]).

In this case, we agree with the Appellate Division that the education and medical expenditures at issue fall within the class of expenditures authorized by the trust since the terms of the trust explicitly permit trust funds to be used for Maggie's "support, education, maintenance and general welfare." But even when the trust instrument vests the trustee with broad discretion to make decisions regarding the distribution of trust funds, a trustee is still required to act reasonably and in good faith in attempting to carry out the terms of the trust (*see Matter of Bruches*, 67 AD2d 456 [2d Dept 1979]; *In re Abert's Estate*, 118 NYS2d 864 [Sur Ct, NY County 1950]). Although father sought and obtained court approval to access the trust for Maggie's college expenses, he did not secure judicial approval to use trust assets to pay his obligation regarding her secondary school tuition and certain medical expenses. Thus, we remit the matter to Surrogate's Court for a hearing to determine whether the expenditures were authorized in good faith and in furtherance of the beneficiary's interests.

Accordingly, the judgment of Surrogate's Court appealed from and order of the Appellate Division brought up for review should be reversed, without costs, and the matter remitted to Surrogate's Court for further proceedings in accordance with the opinion herein.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in per curiam opinion.

Judgment of Surrogate's Court appealed from and order of the Appellate Division brought up for review reversed, etc.